# IN THE UNITED STATES COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PAUL TAY,<br>　　　　　Plaintiff,<br>*vs.*<br><br>CITY OF TULSA *et al*,<br>　　　　　Defendants. | CASE NO. 23-CV-00932<br>District Judge Jill N. Parrish<br>Magistrate Judge Jared C. Bennett |

## STATE DEFENDANTS' MOTION TO DISMISS

COME NOW, the Defendants, State of Oklahoma, Oklahoma Governor Kevin Stitt, Tulsa County District Attorney Steve Kunzweiler, Oklahoma Attorney General Gentner Drummond, and Oklahoma Medical Marijuana Authority Director Adria Berry (collectively "the State Defendants"), to move this Court to dismiss them from this lawsuit. In support of this motion the State Defendants would show this Court the following:

## PLAINTIFF'S ALLEGATIONS

*Pro se* Plaintiff, Paul Tay has sued several State and local officials along with the City of Tulsa and the State of Oklahoma seeking money damages [doc. 1 ¶ 19], Declaratory Relief [doc. 1 ¶¶ 20-30, ¶¶ 32-39], requesting both Temporary and Permanent Injunctions. [doc. 1 ¶ 31 & ¶ 40]. The only factual allegations pled appear to revolve around an arrest and prosecution of Plaintiff that occurred on "23 August 2021, [when] Tulsa Police Department arrested [him] without competent jurisdiction on treaty-defined Indian Territory contrary to treaties, the Constitution, and federal law, 25 USC § 71." [doc. 1 ¶ 2 - referencing *State v. Tay*, Case No. CF-2021-3343]. He does not claim Native-American status but does alleges all State of Oklahoma felony charges were dismissed on 9 August 2022. [doc. 1 ¶ 5]. The case

referenced in his Complaint was filed in Tulsa County, State of Oklahoma district court where Plaintiff was charged with Rape in violation of 21 O.S. § 1114; Kidnapping in violation of 21 O.S. 741, and Assault and Battery with a Dangerous Weapon in violation of 21 O.S. § 645. [see OSCN.net - Tulsa County, CF-2021-3343].[1] The State of Oklahoma dismissed that lawsuit on August 8, 2022. *Id.* [doc. 1 ¶ 5 – without prejudice].

## PLAINTIFF'S HISTORY OF SUING STATE OFFICIALS

Plaintiff has a long and checkered history of criminal activity in this State of Oklahoma.

Tulsa Co. CF-2003-1575 (Conviction – Assault on a Police Officer)

Tulsa Co. CM-2003-6113 (Conviction – Trespass; Fail to Signal; Obstruction of an Officer)

Oklahoma Co. CM-2004-846 (Conviction - Outraging Public Decency; Assault upon Police officer; Obstructing an Officer)

Tulsa Co. CF-2015-6561 (Conviction – Petit Larceny)

Tulsa Co. CM-2019-3325 (Conviction – Outraging Public Decency)

Tulsa Co. CF-2019-6058 (Conviction – Misdemeanor – Knowingly Concealing Stolen property)

Tulsa Co. CM-2021-2369 (Conviction – Disturbing the Peace)

Plaintiff also has a long history of suing State and Local Official in the State of Oklahoma.

*Tay v. Tulsa County Sheriff's Office*, Appellant Case, MA-118795 (Mandamus action)

*Tay v. Green*, 2022 OK 37, 508 P.3d 431 (challenging State Question dealing with the Medical Marijuana laws); see related case 2020 OK 57, 468 P.3d 383

---

[1] This Court can take judicial notice of State Court dockets. See *Tellabs, Inc. v. Makor Issues & Rights*, Ltd, 551 U.S. 308, 322, 127 S.Ct. 2499 (2007); Rule 201 of the Federal Rules of Evidence allows a court to, ***at any stage of the proceeding***, take notice of "adjudicative" facts that fall into one of two categories: (i) facts that are generally known within the territorial jurisdiction of the trial court; or (ii) facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

*Tay v. Regalado*, Appellant Case, MA-118764 (Mandamus; COVID-19 imprisonment challenge)

*Tay v. Hunter*, Appellant Case, O-118826 (Mandamus action against Attorney General)

*Tay v. Stitt*, Appellant Case, MA-118856 (Mandamus action against Governor)

*Tay v. Hunter*, Appellant Case, O-118957 (Mandamus action against Attorney General)

*Tay v. O'Meilia*, Appellant Case, O-118960 (Mandamus action against Tulsa City official)

*Tay v. Bynum*, Appellant Case, MA-119411 (Mandamus against Tulsa Mayor)

*Tay v. Stitt*, Appellant Case, MA-119479 (Mandamus against Governor and several other officials)

*Tay v. Ziriax*, Appellant Case, PR-119487 (Writ Prohibition against State Election Board)

*Tay v. Williams*, Appellant Case, MA-119512 (Mandamus against Okla. Medical Marijuana Authority)[2]

## STATE OF OKLAHOMA HAS ELEVENTH AMENDMENT IMMUNITY

Plaintiff has named the State of Oklahoma in this case. However, the State has Eleventh Amendment immunity from suit in federal court. *Meiners v. University of Kansas*, 359 F.3d 1222, 1232-33 (10th Cir. 2004). The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. That Amendment bars suits for damages against a state in federal court, absent a waiver of immunity by the state. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Nevada Dept. Of Human Resources v. Hibbs*, 538 U.S. 721, 726 (2003)(The Eleventh Amendment bars private lawsuits in federal

---

[2] This list is not exhaustive and can be viewed on oscn.net, the State of Oklahoma's official court docket website.

courts against unconsenting states).  Oklahoma's Legislature has expressly refused to waive Eleventh Amendment immunity or otherwise consent to such lawsuits against the state, any state agency, or its' employees.  Title 51 O.S. § 162(E) sets forth in relevant part:

> Nothing in this section shall be construed to waive any immunities available to the state under the terms of the Eleventh Amendment to the Constitution of the United States.  Any immunity or other bar to a civil lawsuit under state or federal law shall remain in effect.

The Eleventh Amendment to the United States Constitution bars suits against a state and/or any of its agencies unless the state has waived its immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989).  The burden is on the Plaintiff to assert and then prove a State has waived its immunity in Federal court. Absent a state's express waiver of sovereign immunity under the Eleventh Amendment, a federal court lacks subject matter jurisdiction to determine if the state and its officers have violated the state's own law. *Harrell v. United States*, 443 F.3d 1231, 1234 (10th Cir.2006)(Eleventh Amendment immunity extends to state law claims); *See Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998) ("[T]he Eleventh Amendment bars federal court jurisdiction over a state agency for both money damages and injunctive relief, or a state official acting in her official capacity in a suit for damages. . . ."). Furthermore, the State and the state official Defendants sued in their official capacities are not "persons" under 42 U.S.C. § 1983. *Will v. Michigan State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *See also*, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68-69, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (noting that § 1983 actions do not lie against the state). Therefore, they cannot be sued under that statute. As such, this Court must dismiss the State of Oklahoma and the state official Defendants sued in their official capacities from this lawsuit.

4

## THIS COURT HAS NO PERSONAL JURISDICTION

Before, a federal court may assert personal jurisdiction over a defendant, it must satisfy the due process standard of the 5th and 14th Amendments. *Dusenbery v. U.S.,* 534 U.S. 161, 167 (2002); *Sinochem Intern. Co. Ltd. V. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 127 S.Ct. 1184 (2007) ("A district court … may dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."). Plaintiff's Complaint alleges federal question jurisdiction pursuant to 42 U.S.C. § 1983 (civil rights), 42 U.S.C. § 1331 (federal question), 25 U.S.C. § 71 (Native-American Treaties), 25 U.S.C. § 180 (settling on Native-American lands), Article I, § 8, cl. 3 (Congress power to regulate Commerce with Indian tribes), Article VI, cl. 2 (bans religious tests), 1790 Treaty with the Creeks, Article VI, 1856 Treaty with the Creeks, Article IV, XV, 1866 Treaty Creeks, Article I. All his allegations refer to Defendants and incidents that occurred in the State of Oklahoma by various State, Federal, and Local officials from Oklahoma. [doc. 1¶ 2].

"Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (internal quotation marks and citations omitted). In federal question cases "where jurisdiction is invoked based on nationwide service of process", the court must look to the due process considerations under the Fifth Amendment. *Id.* at 1318. That is, "in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment

5

requires the plaintiff's choice of forum to be fair and reasonable to the defendant." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) (internal quotation marks and citation omitted).

Because 42 U.S.C. § 1983 does not, by itself, confer nationwide service of process or jurisdiction upon federal district courts to adjudicate claims, Fed.R.Civ.P. 4(k)(1)(A) requires this Court to review Utah's long-arm statute, which must be coextensive with constitutional limitations imposed by the Due Process Clause. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). The Utah long-arm statute provides for jurisdiction over an out of state resident based upon a "claim arising from" seven "enumerated acts," including: "(1) the transaction of any business within the state ... (3) the causing of any injury within the state whether tortious or by breach of warranty." U.C.A. § 78B-3-205. No named Defendant is alleged to have transacted any business within Utah or caused an injury to Plaintiff within the State of Utah. [doc.1].

"The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Additionally, due process analysis requires the court to ensure that the exercise of jurisdiction over a defendant "does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 1167.

"The 'minimum contacts' standard may be met in two ways"; namely, by establishing general or specific jurisdiction. *Intercon, Inc.*, 205 F.3d at 1247. General jurisdiction requires

6

"affiliations with the State [that] are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014); see also *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) ("Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts."). There are absolutely no allegations that any of the State Defendants have conducted any "continuous and systematic general business" in the State of Utah.

"Specific jurisdiction, on the other hand, is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008). In other words, a defendant must "'purposefully avail[ ]' himself of the protections or benefits of the state's laws and 'should reasonably anticipate being hauled into court there.'" *Marcus Food Co.*, 671 F.3d at 1166 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-76 (1985)). "The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have purposefully directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Old Republic Ins. Co.*, 877 F.3d at 904 (internal quotation marks and citations omitted). The Supreme Court has made clear that specific jurisdiction "demands that the suit arise out of or relate to the defendant's contacts with the forum", meaning a causal link is not required between the plaintiff's injuries and the defendant's forum-related activities. *Ford Motor Co. v. Montana Eighth*

7

*Jud. Dist. Ct.*, 141 S. Ct. 1017, 1019 (2021) (internal quotation marks and citation omitted) (emphasis added); *see id.* at 1026 ("But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct.").

As to traditional notions of fair play and substantial justice, the Court must consider five factors in determining whether the exercise of jurisdiction would be fair:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

*Marcus Food Co.*, 671 F.3d at 1167.

Plaintiff cannot meet his burden of establishing minimum contacts of fair play and substantial justice to satisfy Due Process. Utah has absolutely no state interest in resolving Plaintiff's dispute with the State of Oklahoma officials, for activities that occurred in Oklahoma. While Plaintiff may claim his current residency is Utah would be "convenient and effectual" to him, the "efficient resolution of [the] controversies" in this case are best served in the State of Oklahoma where the federal violations allegedly occurred, and where all the witnesses and Defendants reside. Finally, the "shared interest of the several states … in furthering fundamental social policies" are not present in this case, as the State of Oklahoma is the effectual best place for Plaintiff's claims to be resolved. Therefore, this Court must dismiss the State Defendants from this case for lack of "personal jurisdiction."

## DISTRICT ATTORNEY KUNZWEILER IS
## ENTITLED TO ABSOLUTE IMMUNITY

Plaintiff has named Tulsa County District Attorney Kunzweiler in both his individual and official capacity. His allegations appear to be that Kunzweiler filed charges against him in Tulsa County Case CF-2021-3343 without competent jurisdiction. He has not alleged which federal constitutional amendment he claims Kunzweiler has violated only citing § 1983 and 25 U.S.C. § 71. Regardless, Kunzweiler enjoys absolute prosecutor immunity from suit.

"State prosecutors are entitled to absolute immunity against suits brought pursuant to § 1983 for activities intimately associated with the judicial process." *Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994) (emphasis, ellipsis, and internal quotation marks omitted); *Agnew v. Moody*, 330 F.2d 868, 869 (9th Cir. 1964) (holding that absolute prosecutorial immunity applies to Section 1985 claims). "Absolute immunity is necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990) (quoting *Butz v. Economou*, 438 U.S. 478, 512 (1978)) (quotation marks and ellipsis omitted). Prosecutors are, unfortunately, not blessed with benefit of foresight. Yet, they are required to make quick judgment calls and try a criminal case within a short period of time. Thus, to maintain a smooth functioning judicial process, a prosecutor should not be distracted by the threat of subsequent time-consuming and duplicative civil litigation. *Id.* (citing *Imbler v. Pachtman*, 424 U.S. 409, 424-26 (1976). "Attaining the [criminal justice] system's goal of accurately determining guilt or innocence requires that both the prosecution and the defense have wide discretion in the conduct of the trial and the presentation of evidence." *Imbler*, 424 U.S. at 426. "A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in

9

conducting them in court" which is a non-delegable duty. *Id.* at 425. "The public trust of the office prosecutor's would suffer if he were constrained in making every decisions by the consequences in terms of [their] own potential liability in a suit for damages." *Id.* Hence, affording a prosecutor only qualified immunity would likely have serious adverse consequents on the criminal judicial system. *Id.* at 426.

To determine whether a prosecutor is entitled to absolute immunity, "the determinative factor is advocacy because that is the prosecutor's main function." *Id.* (internal quotation marks omitted). Absolute immunity may attach to even "administrative or investigative functions when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." *Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2000) (quoting *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991)). The duties of a prosecutor and his role as an advocate likewise involves actions preliminary to the initiation of prosecution. *Imbler* at 431. Hence, an action falls within advocacy, and therefore absolute immunity, when (1) the action is closely associated with the judicial process, (2) it is uniquely prosecutorial function, such as the decision to bring charges, and (3) it requires the exercise of professional judgment. *Id. Imbler* clearly establishes that prosecutors are immune in their decision to initiate criminal proceedings. 424 U.S. 421-24. This immunity applies even if the prosecutor files charges knowing he lacks probable cause. *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007). This absolute prosecutorial immunity applies to both claims that a prosecutor willfully used perjurious testimony and claims that a prosecutor willfully suppressed evidence. *See Imbler*, 424 U.S. at 431 n. 34; *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372 n. 4 (10th Cir. 1991) (it is a "well-settled rule that a prosecutor cannot be held personally liable for the knowing

suppression of exculpatory information." (Internal quotation marks omitted)); *Harrington v. Almy*, 977 F.2d 37 (1st Cir. 1992) ("the interest that prosecutorial immunity is designed to protect—independence in the charging decision—is implicated whether the decision is to initiate a prosecution or decline to do so."); *See Kulwicki v. Dawson*, 969 F.2d 1454, 1463–64 (3d Cir. 1992) ("The decision to initiate a prosecution is at the core of a prosecutor's judicial role. A prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred."); *Fuchs v. Mercer Cty.*, 260 F. App'x 472, 475 (3d Cir. 2008) ("Prosecutors enjoy absolute immunity for the decision to initiate a prosecution, for evaluation of evidence collected by investigators, and even for failure to conduct adequate investigation before filing charges."). All of the factual allegations against Kunzweiler are intimately related to his duties as a prosecutor, and therefore, this Court must dismiss him in his individual capacity from this lawsuit.

## GOVERNOR STITT, ATTORNEY GENERAL DRUMMOND, AND OMMA DIRECTOR BERRY IS ENTITLED TO QUALIFIED IMMUNITY

Plaintiff has sued Oklahoma Governor Stitt, Oklahoma Attorney General Drummond, and Oklahoma Medical Marijuana Authority Director Barry in both their official and individual capacities. To the extent he is suing them in their official capacity pursuant to *Ex Parte Young*,[3] for declaratory judgment seeking injunctive relief they must be dismissed because Plaintiff lacks standing for any prospective injunctive relief. To the extent that he is suing them in their individual capacities, they are entitled to qualified immunity.

---

[3] 209 U.S. 123, 28 S.Ct. 441 (1908).

### *Ex Parte Young* and Standing

When a state official is sued in their official capacity, it is the same as suing the State itself. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). The Eleventh Amendment prohibits a federal court from exercising jurisdiction over either States or state officials sued in their official capacity, except in very limited situations. *See, e.g., Printz v. United States*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (Congress may not commandeer state officers); *Coyle v. Smith*, 221 U.S. 559, 579, 31 S.Ct. 688, 55 L.Ed. 853 (1911) (Congress may not dictate a State's capital). One of those limited situations, allows a federal court to obtain jurisdiction over a state official sued in their official capacity pursuant the *Ex parte Young* doctrine. Under that doctrine a federal court can retain jurisdiction over a state official sued in their official capacity for the limited purpose of determining if that particular state official is currently violating a Plaintiff's U.S. Constitutional or federal rights. *Ex parte Young*, 209 U.S. at 159-160. However, even then the federal court only possesses the authority under *Ex parte Young* to issue prospective injunctive relief. *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635 (2002). If a Plaintiff's claim is tantamount to an award of damages, irrespective of how it is pled, the federal court lacks jurisdiction over that state official because the official is said to possess sovereign immunity under the Eleventh Amendment. *Papasan v. Allain*, 478 U.S. 265 (1986).

In addition, Article III of the U.S. Constitution limits the judicial power of the United States to the resolution of "Cases" and "Controversies," and "Article III standing … enforces the Constitution's case-or-controversy requirement." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)(quoting *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). To

establish Article III standing, a plaintiff must show: (1) "an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of - the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)(omissions in original) (internal quotation marks and citations omitted) (emphasis added). *Hein v. Freedom From Religion Foundation, Inc.* 551 U.S. 587 (2007) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."). The doctrine ... ensure[s] that federal courts do not exceed their authority as it has been traditionally understood" by "limit[ing] the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, —– U.S. ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citation omitted). Only those litigants that have established that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision," have standing to sue. *Id.*, see also, *Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1280 (10th Cir. 2002) ("mere allegations of injury, causation, and redressability are insufficient.").

Plaintiff has no standing for his claims for relief. "[T]he injury-in-fact requirement ... helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014).

13

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, ⎯⎯ U.S. ⎯⎯, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016) "[T]o be 'particularized,'" an injury " 'must affect the plaintiff in a personal and individual way.' " *Id.* To be "concrete," an injury must "actually exist." *Id.* at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation."). To be "actual or imminent," the alleged "injury ... must be more than a possibility." *Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1283 (10th Cir. 2002). "Allegations of possible future injury do not satisfy the ['actual or imminent'] requirement [ ] of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Rather, a plaintiff must establish that "[t]he 'threat of injury [is] both real and immediate.'" *Essence, Inc.*, 285 F.3d at 1282 (internal quotation marks omitted). This Court must dismiss all of the claims against Kunzweiler, Stitt, Drummond, and Berry because Plaintiff has no standing under *Ex Parte Young* for any prospective injunctive relief.

**Qualified Immunity**

To the extent Plaintiff is suing Stitt, Drummond, and Berry in their individual capacity, they request *qualified immunity*. "Qualified immunity balances two important interests "[1] the need to hold public officials accountable when they exercise power irresponsibly and [2] the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231(2009). The purpose of the doctrine is to provide government officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting

14

*Ashcroft v. al Kidd*, 563 U.S. 731, 743 (2011)). Once qualified immunity is asserted, the burden shifts to the Plaintiff to overcome that claim by pointing to case law that would have alerted the officials that their alleged actions violated clearly established law. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Qualified Immunity is presumed. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Pahls v. Thomas*, 718 F.3d 1210 (2013) (it is the norm).

"The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has [pled] a claim for relief" against each of the defendants. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (the complaint cannot merely use the generic term "Defendants" when identifying misconduct, but instead must identify which defendants are alleged to have done what to violate Plaintiff's rights). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (internal quotation marks omitted). But "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). To state a claim for relief that is plausible on its face and to overcome the state officials' defense of qualified immunity, Plaintiff "must allege facts sufficient to show (assuming they are true) that the [official] plausibly violated [his] constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 F.3d at 1249.

Furthermore, "[t]he clearly established law must be particularized to the facts of the case" and may not be defined at a high level of generality. *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It is the Plaintiff's burden to

15

produce case law in which "the facts … must closely correspond to the contested action before the defendant official(s) [are] subject to liability." *Gregorich v. Lund*, 54 F.3d 410, 415 (7th Cir. 1994); *District of Columbia v. Wesby*, 138 S.Ct. 577, 583 U.S. 48 (2018) (we have stressed the need to "identify a case where an officer acting under similar circumstances . . . was held to have violated [federal law]"); *see also*, *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (internal quotation marks omitted). The failure to identify such a case is fatal to the claim. *Guterrez*, at 902; *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013). Existing precedent must have placed the constitutional question beyond debate. *Ashcroft v. al Kidd*, 563 U.S. at 741.

Therefore, qualified immunity protects officials regardless of whether the official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. at 232. As a result, only those who are "incompetent" or those who "knowingly violate the law" can be held liable. *Ashcroft v. al Kidd*, 563 U.S. at 743 (When properly applied it protects "all but the incompetent or those who knowingly violate the law"); *see also*, *City & Cty. of San Francisco v. Sheehan,* 135 S. Ct. 1765, 1774 (2015). In sum, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis added, internal quotation marks omitted); *District of Columbia v. Wesby*, 583 U.S. 48 (2018)(we have stressed the need to "identify a case where an officer acting under similar circumstances . . . was held to have violated [federal law]:); *see also*, *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (internal quotation marks omitted). This is an objective standard and the failure to identify such a case is fatal to the claim. *Guterrez*, at 902; *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013).

Based on the alleged facts in the Complaint, this Court must grant Stitt, Drummond, and Berry qualified immunity and dismiss them from this lawsuit. The Complaint wholly fails to allege what (if anything) any of these State officials did that would be a violation of federal law. Therefore, they must be granted qualified immunity and dismissed from this lawsuit.

## CONCLUSION

This Court must dismiss the State Defendants for lack of personal jurisdiction, sovereign immunity of the State, Plaintiff's lack of standing for prospective injunctive relief, and absolute/qualified immunity.

Respectfully submitted,

s/Kevin McClure
**KEVIN L. MCCLURE, OBA# 12767**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: Kevin.McClure@oag.ok.gov
*Attorney for Defendants State of Oklahoma, Oklahoma Governor Kevin Stitt, Tulsa County District Attorney Steve Kunzweiler, Oklahoma Attorney General Gentner Drummond, and Oklahoma Medical Marijuana Authority Director Adria Berry*

## CERTIFICATE OF MAILING

I hereby certify that on this 8th day of February, 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and Notice of Electronic Filing to the following who is a registered participant:

Paul Tay, Pro Se Plaintiff
P.O. Box 3604
Tulsa, OK 74101
ginzbergellsworth@gmail.com

Kyle J. Kaiser
Utah Attorney General's Office
P.O. Box 140856
Salt Lake City, UT 84114
kkaiser@agutah.gov

 s/Kevin McClure
**Kevin McClure**